1  **STEPTOE & JOHNSON LLP**
   WILLIAM F. ABRAMS (CA SB# 88805)
2  wabrams@steptoe.com
   SEONG H. KIM (CA SB# 166604)
3  skim@steptoe.com
4  REBECCA EDELSON (CA SB# 150464)
   redelson@steptoe.com
5  WILLIAM G. PECAU (CA SB# 177857)
6  wpecau@steptoe.com
   JEFFREY M. THEODORE (*phv* to be submitted)
7  jtheodore@steptoe.com
8  1001 Page Mill Road
   Building 4, Suite 150
9  Palo Alto, CA  94304
10 Telephone: (650) 687-9500
   Facsimile: (650) 687-9499
11

12 **McMANIS FAULKNER**
   ELIZABETH PIPKIN (CA SB# 243611)
13 epipkin@mcmanislaw.com
14 50 W. San Fernando Street
   San Jose, CA 95113
15 Telephone: (408) 279-8700
16 Facsimile: (408) 279-3244

17 Attorneys for Defendants
   SK HYNIX INC., SK HYNIX AMERICA INC. and
18 SK HYNIX MEMORY SOLUTIONS INC.

19              **UNITED STATES DISTRICT COURT**
20              **NORTHERN DISTRICT OF CALIFORNIA**
                      **SAN JOSE DIVISION**
21

| | |
|---|---|
| 22  SANDISK CORPORATION, | Case No.: |
| 23              Plaintiff, | |
| 24      vs. | **NOTICE OF REMOVAL** |
| 25  SK HYNIX INC., SK HYNIX AMERICA | REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED |
| 26  INC., SK HYNIX MEMORY SOLUTIONS and DOES ONE through | State Court Complaint Filed: 3/13/14 |
| 27  TEN, inclusive, | Removal Pleading Filed: 11/05/14 |
| 28              Defendants. | |

Case 5:14-cv-04940-LHK   Document 1   Filed 11/06/14   Page 2 of 16

# INTRODUCTION

1. Defendants SK Hynix, SK Hynix America, and SK Hynix Memory Solutions remove this suit to the United States District Court for the Northern District of California pursuant to Chapter 2 of the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 201-208. Congress gave federal courts jurisdiction over matters relating to international arbitration agreements and awards in light of "the emphatic federal policy in favor of arbitral dispute resolution" that "applies with special force in the field of international commerce" and to ensure compliance with United States treaty obligations under the New York Convention on Recognition and Enforcement of Foreign Arbitral Awards (the "Convention"). *Mitsubishi Motors v. Soler Chrysler-Plymouth*, 473 U.S. 614, 631 (1985); 21 U.S.T. 2517.

2. Here, Hynix and Plaintiff SanDisk Corp. are parties to a 2007 patent cross-license agreement ("PCLA") that ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬ PCLA falls under the Convention.

3. SanDisk's state court action under the California Uniform Trade Secrets Act ("CUTSA") is deeply intertwined with the PCLA. SanDisk alleges that Hynix misappropriated its "NAND flash memory technology," such as "NAND flash memory designs, devices," and "fabrication process[es]." Compl. ¶ 34 (Ex. A12). But, in the PCLA, ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬

4. This makes federal court the proper forum under the FAA. In Chapter 2, Congress enacted a "sweeping" removal provision that "provides federal courts with remarkably broad removal authority." *Infuturia Global v. Sequus Pharmaceuticals*, 631

1   F.3d 1133, 1138 & n.5 (9th Cir. 2011).  The FAA permits a defendant to remove a state
2   court action that "relates to an arbitration agreement or award falling under the
3   Convention . . . at any time before the trial thereof."  9 U.S.C. § 205.  This standard is
4   satisfied "whenever an arbitration agreement falling under the Convention could
5   *conceivably* affect the outcome of the plaintiff's case" or where it "has some connection"
6   "as a matter of logic" to "the subject matter of the litigation."  *Infuturia*, 631 F.3d at 1138
7   (emphasis in original); *Acosta v. Master Maintenance and Construction*, 452 F.3d 373,
8   378, 379 (5th Cir. 2006).  Because the PCLA ████████████████████
9   ███████████████████████████████████████████████████████
10  █████████████████████████████████████  That makes removal
11  proper under the Convention.

**PARTIES**

13  5.   Plaintiff SanDisk Corporation is a Delaware corporation with its principal
14  place of business in Milpitas, CA.
15  6.   Defendant SK Hynix, Inc., is a Korean corporation with its principal place
16  of business in Icheon, Korea.
17  7.   Defendant SK Hynix America, Inc., is a California corporation with its
18  principal place of business in San Jose, CA.
19  8.   Defendant SK Hynix Memory Solutions is a California corporation with its
20  principal place of business in San Jose, CA.

**JURISDICTION, VENUE, AND ASSIGNMENT**

22  9.   Jurisdiction.  This Court has jurisdiction pursuant to Chapter 2 of the
23  Federal Arbitration Act because this action relates to an arbitration agreement falling
24  under the New York Convention.  *See* 9 U.S.C. §§ 203, 205.
25  10.  Venue.  Venue is proper in the Northern District of California, San Jose
26  Division because the California Superior Court for Santa Clara County, the place where
27  the action was pending, falls within this judicial district.  9 U.S.C. § 205.
28

1  11. Intradistrict Assignment. This action should be assigned to the San Jose
2  Division because that Courthouse serves Santa Clara County, in which this removed
3  action was filed in state court.

## BACKGROUND AND PROCEDURAL HISTORY

### A. SanDisk's Misappropriation Claim

12. SanDisk accuses Hynix of misappropriating trade secrets relating to the research, development, design, and manufacturing of NAND flash memory, a type of electronic data storage often found in USB flash drives, in smartphones, and in modern laptops boasting solid-state drives.

13. SanDisk claims that in 2008 Yoshitaka Sugita, a former employee of SanDisk KK, its Japanese subsidiary (SanDisk Japan), downloaded 10 gigabytes of its confidential flash memory technology from a Japanese research and development database before resigning and accepting a position with SK Hynix. Compl. ¶¶ 5-6, 33-34. ████████████████████████████████████████████████████████████████████████████████████████████████████████ Even so, SanDisk asserts that the 10 gigabytes contained some of its "most sensitive and valuable flash memory trade secrets." Compl. ¶¶ 31-35.

14. According to SanDisk, Sugita had broad access to information "related to the development and production of NAND flash memory designs, devices and processes." Compl. ¶ 33. The ten gigabytes he allegedly downloaded "includ[ed], but [was] not limited to, semiconductor fabrication process flows, steps and recipes, circuit layouts, research and development analyses and results, optimal process tool settings, and other design, device, process, operational and business trade secrets." Compl. ¶ 34.

15. Once at Hynix, Sugita allegedly "disclosed SanDisk's trade secret information to his Hynix employers in emails and reports that he prepared." Compl. ¶ 6. Hynix then allegedly "misused this information for . . . its own NAND flash memory development." *Id*.

16. Sugita left Hynix in 2011. Compl. ¶ 35.

**B.     Proceedings Below**

17.     SanDisk claims to have discovered the alleged 2008 misappropriation only in 2014 from Toshiba.  Apparently, Toshiba learned of it from an "informant" who had worked for both SanDisk and Hynix.  Compl. ¶ 36.  SanDisk then filed this action in California Superior Court for Santa Clara County on March 13 and sought a temporary restraining order and a preliminary injunction.  Also on March 13, Toshiba brought an action in Japan against Sugita and Hynix, where it claimed ownership and misappropriation of the same trade secrets that are the basis for SanDisk's claims.

18.     SanDisk's Complaint does not identify any particular trade secrets at issue, and SanDisk has not yet filed a CCP 2019.210 statement "identify[ing] the trade secret with reasonable particularity."  But SanDisk claims to have "already identified its trade secrets in conjunction with the preliminary injunction proceedings."  10/31/14 Case Management Statement Addendum A n.6 (Ex. A142).  There, SanDisk attached to its preliminary injunction papers ███████████████████ which it alleges Sugita took with him from SanDisk and circulated inside Hynix.  *See* SanDisk PI Reply at 6-7 (Ex. B66); Ito Decl. ¶ 8 (Ex. B27).  This ███████████████████ ███████████████████ that SanDisk asserts "obviously contain SanDisk trade secret information" and "are exact copies of SanDisk's confidential trade secret information" found on "source documents maintained on the SanDisk network."  Ito Decl. ¶ 8.[1]

19.     The Superior Court issued an order deeming the case complex, staying discovery, and setting an initial case management conference for July 18, 2014.  It also ordered Hynix to show cause why a preliminary injunction should not issue at a hearing on June 20, 2014, later moved to June 24, 2014.

---

[1] SanDisk also identified the names of certain other files that it says contain its trade secrets and described their general subject matter – "the categories of information" and "what types of information th[ose] documents reveal" – without specifying the trade secrets themselves.  SanDisk PI Reply at 6-7; Ito Decl. ¶¶ 13-17; Shi Decl. ¶ 6 (Ex. B42).

20. After the June 24 hearing, the Superior Court granted SanDisk's requested injunction in part and set a further hearing for July 25, 2014. It then held further proceedings on the preliminary injunction at a July 16, 2014 hearing, after which it granted a partial stay of the preliminary injunction, and at the July 25 hearing, after which it denied the remainder of SanDisk's requested preliminary relief. It also re-scheduled the case management conference for August 1, 2014.

21. At the case management conference, the Superior Court ordered the parties to meet and confer regarding discovery, a protective order, and a briefing schedule on dispositive motions. It also ordered Hynix to reserve a hearing date for its dispositive motions and to set a further case management conference on the same date. Those were set for October 16, 2014.

22. In the interim, however, Toshiba had filed a related case in Santa Clara County Superior Court seeking to enjoin Hynix's then-lead counsel, Paul Hastings, from continuing to represent Hynix in this litigation. On September 5, 2014, the Superior Court issued a preliminary injunction against Paul Hastings and ordered that firm to withdraw from its representation of Hynix.

23. Having disqualified Hynix's counsel, the Superior Court issued a September 10, 2014 order taking the October 16, 2014 hearing off the calendar and staying the case until November 10, 2014. On September 24, 2014, undersigned counsel appeared for Hynix and have been familiarizing themselves with the case ever since.

24. As of the date of removal, Hynix has not filed an Answer, motions to dismiss, or other responsive pleadings, SanDisk has not filed its identification of trade secrets under California Code of Civil Procedure 2019.210, and discovery has not commenced.

**C.    The Arbitration Agreement**

25. Prior to Paul Hastings's disqualification, Hynix served on SanDisk a demand for arbitration of this case pursuant to the Parties' 2007 Patent Cross-License

1  Agreement (PCLA), ████████████████████████████████████████
2  ████████  SanDisk rejected the demand and refused to arbitrate.



NOTICE OF REMOVAL – PUBLIC VERSION



**GROUNDS FOR REMOVAL**

I.   **REMOVAL JURISDICTION UNDER CHAPTER TWO OF THE FAA**

35. In Chapter 2 of the Federal Arbitration Act, "Congress granted the federal courts jurisdiction over Convention cases and added one of the broadest removal provisions, § 205, in the statute books." *Acosta v. Master Maintenance and Construction*, 452 F.3d 373, 377 (5th Cir. 2006).

36. Section 205 permits removal of any action whose subject matter "relates to" an arbitration agreement or award that falls under the New York Convention:

> Where the subject matter of an action or proceeding pending in a State court **relates to an arbitration agreement or award falling under the Convention**, the defendant or the defendants may, at **any time before the trial thereof**, **remove such action or proceeding** to the district court of the United States for the district and division embracing the place where the action or proceeding is pending. The procedure for removal of causes otherwise provided by law shall apply, except that **the ground for removal provided in this section need not appear on the face of the complaint but may be shown in the petition for removal**. For the purposes of Chapter 1 of this title any action or proceeding removed under this section shall be deemed to have been brought in the district court to which it is removed.

9 U.S.C. § 205 (emphasis added).

37. Holding that "easy removal is exactly what Congress intended in § 205," the Ninth Circuit has described this provision as "remarkably broad." *Infuturia*, 631 F.3d at 1138 & n.5 (quoting *Beiser v. Weyler*, 284 F.3d 665, 674 (5th Cir. 2002)). Indeed, Congress's purpose in "creat[ing] [this] special removal right" was "to channel cases into federal court." *Acosta*, 452 F.3d at 377.

38. Congress sought to move Convention cases into the district courts in order to "unify the standard by which the agreements to arbitrate are observed." *Suter v. Munich Reinsurance Co.*, 223 F.3d 150, 155 (3d Cir. 2000) (quoting *Scherk v. Alberto-Culver Co.*, 417 U.S. 506, 520 n. 15 (1974)). "Uniformity is best served by trying all

1  Convention cases in federal court unless the parties unequivocally choose otherwise."
2  *Acosta*, 452 F. 3d at 377.
3      39.    A uniform standard is essential because consistent and reliable enforcement
4  of international arbitration awards in the United States vindicates the principle of
5  reciprocity from which American businesses benefit under the New York Convention.
6  Congress recognized that the Convention "serve[s] the best interests of Americans doing
7  business abroad by encouraging them to submit their commercial disputes to impartial
8  arbitration for awards which can be enforced in both U.S. and foreign courts."  S. Rep.
9  No. 91-702, at 3 (1970).  But for American businesses to "gain rights under the
10 Convention, though, Congress had to guarantee enforcement of arbitral contracts and
11 awards made pursuant to the Convention in United States courts."  *Suter*, 223 F.3d at
12 154.  Thus, the ultimate goal of establishing a uniform federal jurisdiction over
13 international arbitration agreements is "to secure for United States citizens predictable
14 enforcement by foreign governments of certain arbitral contracts and awards made in this
15 and other signatory nations."  *Id*.
16     40.    As the Supreme Court has explained:

> A parochial refusal by the courts of one country to enforce an international arbitration agreement would not only frustrate these purposes, but would invite unseemly and mutually destructive jockeying by the parties to secure tactical litigation advantages. . . . [T]he dicey atmosphere of such a legal no-man's-land would surely damage the fabric of international commerce and trade, and imperil the willingness and ability of businessmen to enter into international commercial agreements.

*Scherk*, 417 U.S. at 516-17.

25     41.    Thus, "Congress's intent in § 205 was to confer jurisdiction liberally."
26 *Beiser*, 284 F.3d at 674.
27 **A.**    **The PCLA Falls under the New York Convention**

1   42.     Under Chapter 2 of the FAA, "an arbitration agreement or arbitral award arising out of a legal relationship, whether contractual or not, which is considered as commercial" "falls under the Convention" unless it "is entirely between citizens of the United States" and has no "other reasonable relation with one or more foreign states."  9 U.S.C. § 202.

43.     The Ninth Circuit applies a four factor test to determine whether these requirements are satisfied:  "that (1) there is an agreement in writing within the meaning of the Convention; (2) the agreement provides for arbitration in the territory of a signatory of the Convention; (3) the agreement arises out of a legal relationship, whether contractual or not, which is considered commercial; and (4) a party to the agreement is not an American citizen, or that the commercial relationship has some reasonable relation with one or more foreign states."  *Balen v. Holland America Line*, 583 F.3d 647, 654-55 (9th Cir. 2009).

44.     Here, the PCLA is an agreement in writing.  ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬  Patent cross-licenses and other agreements regarding intellectual property are considered to be commercial.  *See F. Hoffmann-La Roche v. Qiagen, Gaithersburg*, 730 F. Supp. 2d 318, 321, 325 (S.D.N.Y. 2010) ("dispute over certain patent rights contained in a Cross-License Agreement" was a "commercial dispute" within the meaning of Section 202); *Invista North America v. Rhodia Polyamide Intermediates*, 503 F. Supp. 2d 195, 201 (D.D.C. 2007) ("The arbitration agreement arises out of a commercial legal relationship because it governs disputes concerning confidential information used in the research and development of industrial chemicals.").  Finally, Hynix is a party to the PCLA and is not a citizen of the United States.

45.     Thus, the PCLA falls under the Convention.

**B.     This Litigation Relates to the PCLA**

46.     The Ninth Circuit has held that "the phrase 'relates to' is plainly broad."  *Infuturia*, 631 F.3d at 1138; *see also Beiser*, 284 F.3d at 670 (noting the "plainly broad

1  meaning of 'relates to'").  "[W]henever an arbitration agreement falling under the
2  Convention could *conceivably* affect the outcome of the plaintiff's case, the agreement
3  'relates to' the plaintiff's suit.'"  *Infuturia*, 631 F.3d at 1138 (emphasis in original).

4       47.    Because the arbitration agreement need only "conceivably" affect the
5  outcome, "Federal courts will have jurisdiction under § 205 over just about any suit in
6  which a defendant contends that an arbitration clause falling under the Convention
7  provides a defense."  *Id*.  "As long as the defendant's assertion is not completely absurd
8  or impossible, it is at least conceivable that the arbitration clause will impact the
9  disposition of the case.  That is all that is required to meet the low bar of 'relates to'."  *Id*.

10       48.    One way that an arbitration agreement may impact the outcome of a case is
11  if it requires the case to be arbitrated.  *See Beiser*, 284 F.3d at 669-70.  There, in a
12  decision cited heavily by the Ninth Circuit, the Fifth Circuit found the necessary
13  relationship whenever a defendant "contends that the agreements require [a plaintiff] to
14  submit his claims to an arbitrator" and the "contention is not frivolous.  *Id*.

15       49.    The PCLA requires this case to be arbitrated.  ▬▬▬▬▬▬▬▬
16  ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬
17  ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬  The Ninth Circuit, like other
18  federal courts, has construed such ▬▬▬▬▬▬▬▬▬ "broad and far reaching."
19  *Chiron Corp. v. Ortho Diagnostic Systems*, 207 F.3d 1126, 1131 (9th Cir. 2000).  "When
20  the arbitration clause calls for any dispute 'relating to or arising out of' the agreement to
21  be submitted to arbitration, the parties intend the clause to reach all aspects of the
22  relationship."  *Schoenduve Corp. v. Lucent Technologies*, 442 F.3d 727, 732 (9th Cir.
23  2006) (citations and quotation marks omitted).

24       50.    Applying a similarly broad arbitration clause, the Ninth Circuit has held
25  that it covers misappropriation of trade secrets claims so long as they "touch matters
26  covered by the contract containing the arbitration clause."  *Simula v. Autoliv*, 175 F.3d
27  716, 721, 724-25 (9th Cir. 1999); *see also BioD v. Amnio Technology*, 2014 WL 268575
28  (D. Ariz. 2014) (arbitration clause with "related to" language in distribution agreement

1  containing confidentiality provision was broad enough to encompass other IP claims
2  including Lanham Act, trade secrets, and copyright claims); *Farnam Companies v.*
3  *Golden Crown Corp.*, 2003 WL 22331489 (D. Ariz. 2003) (arbitration clause in license
4  agreement covered misappropriation of trade secret claims); *cf. Innovative Engineering*
5  *Solutions v. Misonix*, 458 F. Supp. 2d 1190 (D. Or. 2006) (technology license agreement
6  arbitration clause applied to patent infringement claims).

7      51.    Here, SanDisk's misappropriation claims touch on the same matters
8  covered by the PCLA – NAND flash memory technology and manufacturing and testing
9  processes.  SanDisk alleges that Hynix misappropriated its "NAND flash memory
10  technology," such as "NAND flash memory designs, devices," and "fabrication
11  process[es]."  Compl. ¶ 34.  ███████████████████████████████████
12  ███████████████████████████████████████████████████

13      52.    Hynix will show in this litigation that alleged NAND trade secrets that
14  SanDisk claims were misappropriated are actually covered by the patents it licensed
15  under the PCLA.  While SanDisk has not yet served the formal trade secret disclosure
16  that is required under CCP 2019.210, SanDisk claims to have "identified its trade secrets
17  in conjunction with the preliminary injunction proceedings."  10/31/14 CMS Addendum
18  A n.6.  SanDisk's preliminary injunction papers attached ███████████████
19  ████████████████████████████ constitutes an "exact cop[y] of
20  SanDisk's confidential trade secret information."  Ito Decl. ¶ 8.  Hynix has performed an
21  initial review of the supposed trade secrets contained in the seventy-one page
22  presentation and identified several that are covered by patents licensed in the PCLA.

23      53.    The PCLA's arbitration clause also affects this litigation by requiring that
24  the question of whether this litigation is arbitrable itself be referred to the arbitrator.
25  "Just as the arbitrability of the merits of a dispute depends upon whether the parties
26  agreed to arbitrate that dispute, so the question 'who has the primary power to decide
27  arbitrability' turns upon what the parties agreed about that matter." *First Options of*
28  *Chicago v. Kaplan*, 514 U.S. 938, 943 (1995).

1    54.    ████████████████████████████████████████
2    ████████████████████████████████████████
3    ████████████████████████████████████████
4    ████████████████████████████████████████
5    ████████████████████████████████████████
6    ████████████████████████████████████████
7    ████████████████████████

8    55.    This language has caused "[v]irtually every circuit to have considered the issue [to] determine[] that incorporation of the American Arbitration Association's (AAA) arbitration rules constitutes clear and unmistakable evidence that the parties agreed to arbitrate arbitrability." *Oracle America v. Myriad Group*, 724 F.3d 1069, 1074 (9th Cir. 2013); *see also Petrofac v. DynMcDermott Petroleum Operations Co.*, 687 F.3d 671, 675 (5th Cir. 2012) ("We agree with most of our sister circuits that the express adoption of these [AAA] rules presents clear and unmistakable evidence that the parties agreed to arbitrate arbitrability."); *Gwathmey Siegel Kaufman & Associates Architects v. Rales*, 518 F. App'x 20, 21 (2d Cir. 2013) ("[B]y incorporating the American Arbitration Association ('AAA') rules the parties agreed to have the arbitrators decide arbitrability."); *Contec Corp. v. Remote Solution*, 398 F.3d 205, 209 (2d Cir.2005) ("[W]hen . . . parties explicitly incorporate rules that empower an arbitrator to decide issues of arbitrability, the incorporation serves as clear and unmistakable evidence of the parties' intent to delegate such issues to an arbitrator."); *cf. Wynn Resorts v. Atlantic-Pacific Capital*, 497 F. App'x 740 (9th Cir. 2012) (parties agreed to arbitrate arbitrability by incorporating JAMS rules, which contain similar language).

56.    Because it is not "completely absurd or impossible" that this litigation must proceed to arbitration, the PCLA's arbitration clause "will impact the disposition of the case. That is all that is required to meet the low bar of 'relates to'." *Infuturia*, 631 F.3d at 1138.

1    57.    The PCLA also relates to this action because it provides a substantive
2 defense to SanDisk's claims.  *See Infuturia*, 631 F.3d at 1138-39 (holding that an
3 arbitration agreement or award relates to an action under Section 205 when it "provides a
4 defense" on the merits).

5    58.    As described above, the ████████████████████████████████
6 ████████████████████████████████████████████
7 ████████████████████████████████████████████
8 ████████████████████████████████████████████
9 ████████████████████████████████████████████████
10 ████████████████████████████████████████████
11 ████████████████████████████████████████████
12 ████████████████████████████████████████████
13 ████████████████████████████████████████

**C.    The Notice of Removal Is Timely and Complies with All Procedural Requirements**

59.    Removal is timely because trial has not yet commenced.  *See* 9 U.S.C. § 205 (permitting removal "at any time before the trial").  "The meaning of [] section [205] is clear: a defendant may remove a qualifying state court action to federal court at any time before the claims raised in the state court action have been adjudicated."  *Infuturia*, 631 F.3d at 1139; *see also China North Industries Tianjin Corp. v. Grand Field Co.*, 197 F. App'x 543, 544 (9th Cir. 2006) ("There is no question that Grand Field had the right to remove this action at any time before trial under the New York Convention.").

---

[2] Apart from these binding effects on this litigation, the PCLA is also related to the arbitration clause as a matter of logic."  *Acosta*, 452 F.3d at 377-79; *see also Reid v. Doe Run Resources*, 701 F.3d 840, 844 (8th Cir. 2012). ████████████████████
████████████████████████████████████████

1   60.  In addition, Hynix has not filed an Answer or other responsive pleading; SanDisk has not served its identification of trade secrets; and the Parties have not commenced discovery. Much of the discovery will involve Japan, where Sugita was employed, the alleged trade secrets and servers were located, the alleged misappropriation occurred, and many witnesses and documents are located.

61.  All Defendants join in this Notice of Removal.

62.  This pleading constitutes the notice of removal required by 28 U.S.C. § 1446(a). All process, pleadings and orders served upon defendants, and otherwise filed in state court, are attached as Exhibits A and B.

63.  Hynix will file this removal with the Superior Court for Santa Clara County and serve a copy on SanDisk.

DATED: November 6, 2014       STEPTOE & JOHNSON LLP


By:  /s/ William F. Abrams
Attorneys for Defendants SK HYNIX INC., SK HYNIX AMERICA INC., and SK HYNIX MEMORY SOLUTIONS INC.

DATED: November 6, 2014       McMANIS FAULKNER


By:  /s/ Elizabeth Pipkin
Attorneys for Defendants SK HYNIX INC., SK HYNIX AMERICA INC., and SK HYNIX MEMORY SOLUTIONS INC.

NOTICE OF REMOVAL – PUBLIC VERSION