# EXHIBIT A-12

KEKER & VAN NEST LLP
ROBERT A. VAN NEST - # 84065
rvannest@kvn.com
JEFFREY R. CHANIN - # 103649
jchanin@kvn.com
STEVEN P. RAGLAND - # 221076
sragland@kvn.com
NICHOLAS D. MARAIS - # 277846
nmarais@kvn.com
633 Battery Street
San Francisco, CA 94111-1809
Telephone: 415 391 5400
Facsimile: 415 397 7188

Attorneys for Plaintiff SANDISK CORPORATION

E-FILED
May 5, 2014 3:35 PM
David H. Yamasaki
Chief Executive Officer/Clerk
Superior Court of CA, County of Santa Clara
Case #1-14-CV-262078 Filing #G-62789
By R. Walker, Deputy

SUPERIOR COURT OF THE STATE OF CALIFORNIA

IN AND FOR THE COUNTY OF SANTA CLARA

SANDISK CORPORATION,

Plaintiff,

v.

SK HYNIX, INC., SK HYNIX AMERICA, INC., SK HYNIX MEMORY SOLUTIONS and DOES ONE through TEN, inclusive.

Defendants,

Case No. 1-14-CV-262078

**CORRECTED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF FOR TRADE SECRET MISAPPROPRIATION (CIV. CODE §§ 3426 ET SEQ.)**

**DEMAND FOR JURY TRIAL**

Plaintiff SanDisk Corporation ("SanDisk") alleges as follows:

## NATURE OF THE ACTION

1. SanDisk seeks both damages and an injunction to prevent SK Hynix, Inc. and its North American subsidiaries from misusing confidential trade secret information that it stole from SanDisk in or about 2008.

2. SanDisk is a global leader in flash storage solutions. Its products—including solid-state drives, flash memory cards, USB flash drives and digital audio players—are sold at 260,000 retail locations in more than 100 countries. SanDisk also provides embedded flash drives and removable memory cards to most major smartphone and tablet makers worldwide. Its patented NAND flash memory provides robust and reliable data storage that enables faster and smoother performance.

3. SanDisk's success comes from decades of work to develop cutting edge technology and billions of dollars invested in research and development. Today, SanDisk has over 4,800 patents, more than 5,500 employees, and research and development operations in 16 countries—including the United States, Japan and Korea. As a result of these efforts, SanDisk has developed confidential, proprietary technology, processes and techniques for, among other things, making the flash memory devices for which it has become famous worldwide.

4. SanDisk's NAND flash memory technology and related trade secret information are among its "crown jewels," and the company has worked equally hard to protect them. SanDisk shares its confidential information and trade secrets with trusted employees and joint venture partners on a need-to-know basis—and, even then, only after they sign strict confidentiality agreements.

5. Despite these precautions, SanDisk has recently learned that Defendants knowingly collaborated with a former SanDisk subsidiary employee, Yoshitaka Sugita, to steal and misuse SanDisk's trade secrets. Until mid-2008, Mr. Sugita worked at a SanDisk–Toshiba joint venture fabrication plant in Yokkaichi, Japan, where—after signing a non-disclosure agreement with SanDisk—he was given access to SanDisk's confidential and proprietary trade secrets relating to the latest generations of its NAND flash memory technology and its future

development roadmap. Shortly after leaving SanDisk, Mr. Sugita began work at SanDisk's competitor, SK Hynix Inc.

6. SanDisk recently learned of information provided by a former SK Hynix, Inc. employee that, before jumping from SanDisk to Hynix, and at Hynix's request, Mr. Sugita downloaded a "huge number of files" from a Japanese R & D database to take to his new employer. According to the informant's report, Mr. Sugita openly disclosed SanDisk's trade secret information to his Hynix employers in emails and reports that he prepared for Hynix. Hynix knowingly received and misused this information for, among other things, its own NAND flash memory development.

7. Rather than compete lawfully with SanDisk, Defendants have engaged in a campaign to misappropriate SanDisk's trade secret and other confidential information to gain technical expertise and to unfairly compete with SanDisk. By stealing SanDisk's confidential and proprietary information, Defendants have been unjustly enriched and have gained an unlawful advantage by using SanDisk's own expertise to compete against SanDisk in SanDisk's own backyard—California— as well as elsewhere in the United States and around the world. Defendants' misconduct has caused injury to SanDisk in California, where it is headquartered.

8. SanDisk seeks an injunction against Defendants to prevent further misuse or disclosure of SanDisk's trade secrets, to prevent further unfair competition, to prevent Defendants from misusing technical and other information derived from the misappropriation, and to require Defendants to return all of SanDisk's trade secret information. SanDisk also seeks compensatory, exemplary and punitive damages to redress past and present injuries and to deter future injury to SanDisk as a result of Defendants' illegal practices.

## THE PARTIES

9. Plaintiff SanDisk is a corporation organized in 1988 and existing under the laws of Delaware. SanDisk's principal place of business is 951 SanDisk Drive, Milpitas, CA 95305. SanDisk designs, develops and manufactures flash memory storage solutions; its products include solid-state drives for computers, memory cards for imaging, computing, mobile, and gaming devices, USB flash drives, and other flash-based memory products.

10. Upon information and belief, Defendant SK Hynix, Inc. ("SK Hynix") is organized under the laws of South Korea. Hynix's principal place of business is 2091, Gyeongchung-daero, Bubal-eub, Icheon-si, Gyeonggi-do, Korea. During the time period at issue in this Complaint, SK Hynix and/or its predecessor companies, affiliates and related entities—manufacturers of SRAM, DRAM, flash memory and other semiconductor devices—sold and distributed products throughout the world, including in and through California, and elsewhere in the United States.

11. Defendant SK Hynix America, Inc. ("Hynix America") is a corporation organized in 1983 and existing under the laws of California. Hynix America's principal place of business is at 3101 North First Street, San Jose, CA 95134. Upon information and belief, Hynix America is a wholly-owned and controlled North American subsidiary of defendant SK Hynix. During the time period at issue in this Complaint, Hynix America sold and distributed Hynix flash memory products in California, and throughout the United States.

12. Defendant SK Hynix Memory Solutions ("HMS") is a corporation organized and existing under the laws of California. HMS's principal place of business is 3103 North First Street, San Jose, CA 95134. Upon information and belief, HMS is a wholly-owned and controlled North American subsidiary of defendant SK Hynix. During the time period at issue in this Complaint, HMS sold and distributed flash memory products in California, and throughout the United States.

13. Upon information and belief, the true identities of Defendant Does 1 through 10 are presently unknown.

## JURISDICTION AND VENUE

14. This Court has personal jurisdiction over SK Hynix, Hynix America and HMS (collectively, "Hynix" or the "Hynix Defendants") pursuant to California Code of Civil Procedure § 410.10 because they have purposely availed themselves of the benefits of doing business in California such that the exercise of personal jurisdiction comports with fair play and substantial justice.

15. This Court also has personal jurisdiction over the Hynix Defendants because they have engaged in intentional conduct directed towards California by soliciting business and investments from California-based companies, and by offering to sell and/or entering into contracts with California-based companies to develop, sell, market and distribute semiconductor devices, integrated circuits, NAND flash memory data storage products, and embedded flash drives. These technologies and products embody, or were created using, confidential SanDisk information and misappropriated trade secrets, as a result of which SanDisk has suffered injury in California and elsewhere.

16. This Court also has jurisdiction over Hynix America and HMS because they are corporations incorporated in, and with their principal places of business in, the State of California.

17. Venue is proper in Santa Clara County pursuant to California Code of Civil Procedure § 395.5 because SanDisk has its principal place of business in Milpitas, in the county of Santa Clara, and because Hynix America and HMS are, and at all times relevant hereto were, California corporations with their principal place of business in San Jose, in the county of Santa Clara; and because SK Hynix is present in and does business in Santa Clara County through its subsidiaries and agents Hynix America and HMS.

## FACTUAL BACKGROUND

### A. SanDisk's Technology

18. SanDisk began as a three-person start-up in Silicon Valley; today, it is a multinational corporation with some 4,800 patents and over 5,500 employees. Over the past 25 years, SanDisk has been innovating, researching, designing, developing and engineering flash memory storage solutions that have transformed and shaped the world. SanDisk both invented, and is the world's largest supplier of, flash storage cards.

19. Every day, SanDisk ships more than two million of its products, many of which end up embedded in ubiquitous and vital devices—from laptops and USB flash drives to smartphones and tablets. A key component of these products is "flash memory," an electronic non-volatile computer storage medium, also known as an integrated circuit ("IC"), a semiconductor device, or a "chip."

20. Today's chips contain millions of microscopic electrical components (each less than a micron in size) that are typically embedded in silicon, interconnected with stacked layers of ultra-fine metallic traces, and etched or plated to become an integrated circuit. SanDisk has developed its own flash memory designs and devices, and has developed or co-developed with Toshiba the manufacturing processes—known as "process flows"—and even more detailed and exacting "recipes" that specify, *inter alia*, what equipment to use, at what settings, as well as the order and duration of each process sub-step used to fabricate the flash memory devices it makes. SanDisk's agreements with Toshiba provide that SanDisk maintains sole ownership of its own intellectual property, and is joint owner of any process technologies that SanDisk and Toshiba co-develop.

21. SanDisk's designs, devices, processes and recipes are trade secrets that provide SanDisk an edge over its competitors, including Hynix. They are protected with the utmost confidentiality and shared only with those who agree to keep them secret. SanDisk's trade secrets are embodied within SanDisk's flash memory devices, and include trade secret characteristics that cannot be readily ascertained even through reverse engineering—characteristics that give SanDisk an advantage over its competitors.

22. SanDisk has spent billions of dollars on research and development to create its trade secret technologies and to develop its highly reliable, high-performance flash storage designs, devices and processes.

23. SanDisk has also developed or co-developed confidential information regarding foundry operations and production management, including the best and most efficient ways to handle matters like scheduling, logistics, process control and maintenance issues.

24. SanDisk's technical, operational and business trade secrets derive independent economic value, actual or potential, from not being generally known to the public, or to other entities and persons such as the Hynix Defendants, who can obtain competitive advantage from their disclosure or use. These secrets give SanDisk a competitive advantage over others in the market, including Hynix.

25. SanDisk has made, and continues to make, reasonable efforts to protect the secrecy of its technical, operational and business trade secrets by—among other things—requiring that all employees execute non-disclosure agreements. SanDisk also restricts access to trade secret information to only those employees, customers or joint venture partners who need to know them, and then only upon their entering into non-disclosure agreements.

26. As set forth below, Defendants have misappropriated SanDisk's valuable trade secrets and have used them to compete unfairly with SanDisk with respect to products sold in California, elsewhere in the United States, and around the world.

**B. SanDisk's Joint Venture with Toshiba**

27. In the 2000s, SanDisk and Toshiba Corporation ("Toshiba") established a series of joint ventures, directed in part to developing and manufacturing various flash memory devices and processes.

28. SanDisk and Toshiba both contributed management, engineers, support personnel, and—subject to strict confidentiality provisions—intellectual property to these joint ventures. SanDisk has maintained exclusive rights to its own products, technology and patents, and joint ownership of any technology borne of the joint venture. SanDisk and Toshiba agreed and took reasonable measures to maintain the confidentiality of information they each contributed to the joint venture, and of that which they jointly developed.

29. One of the SanDisk–Toshiba joint venture projects was located in Yokkaichi, Japan—about 200 miles west of Tokyo. In 2002, SanDisk and Toshiba consolidated their manufacturing efforts at a semiconductor fabrication plant ("fab") in Yokkaichi. In 2008, they entered into a Joint Memory Development Yoakkaichi Agreement that was aimed specifically at developing cutting-edge NAND flash memory devices and processes.

30. As with all other employees, those stationed at the Yokkaichi fab had access to confidential information on a strict need-to-know basis—and only after they signed non-disclosure agreements.

**C. Yoshitaka Sugita Steals SanDisk's Trade Secrets**

31. One of the employees at the Yokkaichi fab was Yoshitaka Sugita, who worked for SanDisk from approximately February 2003 through his resignation effective June 30, 2008.

32. In or about February 2003, Mr. Sugita signed a Proprietary Information and Inventions Agreement ("PIIA") with SanDisk. In that PIIA, Mr. Sugita agreed that he would not disclose any SanDisk proprietary or confidential information to anyone without SanDisk's express written consent. He also confirmed his understanding that all documents furnished to or produced by him during his employment with SanDisk were, and would remain, SanDisk's exclusive property, and that he would not take any SanDisk documents with him when he left the company.

33. Among other duties, Mr. Sugita analyzed defective products at the Yokkaichi fab. To perform this role, Mr. Sugita needed to have and was given access to SanDisk's independent trade secret information, as well as the trade secret information that was jointly developed and owned by SanDisk and Toshiba related to the development and production of NAND flash memory designs, devices and processes for multiple technology nodes.

34. In or about May 2008, while working at Yokkaichi and before leaving SanDisk to join Hynix, Mr. Sugita accessed and misappropriated an enormous amount of information that included certain of SanDisk's most sensitive and valuable flash memory trade secrets. Upon information and belief, Mr. Sugita downloaded 10 gigabytes of information including, but not limited to, semiconductor fabrication process flows, steps and recipes, circuit layouts, research and development analyses and results, optimal process tool settings, and other design, device, process, operational and business trade secrets. SanDisk is informed and believes that Hynix solicited Mr. Sugita to download these files and misappropriate SanDisk's trade secret information for Hynix's benefit.

35. Sandisk is informed and believes that, in or about July 2008, Mr. Sugita officially commenced work at SK Hynix in South Korea—where he was employed until approximately June 2011.

**D. SanDisk Learns about Sugita's Theft—and Hynix's Involvement**

36. More than five years later, in or about January 2014, SanDisk learned that an informant had documented his personal knowledge of Sugita's and Hynix's disclosure and misuse of SanDisk's information. Like Mr. Sugita, the informant had worked first at SanDisk and then at Hynix. The informant knew the information disclosed was SanDisk information or information jointly owned by SanDisk and Toshiba. On information and belief, so did Hynix and its employees, as the informant reports that documents containing the legend "SanDisk/Toshiba Confidential" were distributed among Hynix employees and were posted on Hynix's database. One such document is printed on paper bearing a Hynix watermark, but it clearly contains evaluations, test results and technical decisions and information co-developed by SanDisk and Toshiba and bearing the legend "SanDisk/Toshiba Confidential." The document compares the SanDisk/Toshiba technology with Hynix's, and concludes with a list of ways in which Hynix will use it.

37. Upon information and belief, Mr. Sugita delivered to Defendants substantial SanDisk technical, operational and business trade secret information in violation of his non-disclosure agreement, and Defendants have knowingly and intentionally used that information, despite knowing that it was acquired by improper means.

38. SanDisk and Toshiba have provided Tokyo's Metropolitan Police Department with evidence supporting allegations that Mr. Sugita and Hynix misappropriated SanDisk's trade secret information. Upon information and belief, on or about March 13, 2014 in Japan, a warrant was issued for Sugita's arrest and he was detained by Japanese law enforcement authorities.

**FIRST CAUSE OF ACTION**

**(Trade Secret Misappropriation under Cal. Civ. Code §§ 3426 et seq.)**

39. Paragraphs 1 through 38 above are incorporated herein by reference.

40. To avoid the substantial time and expense required to research, develop, design and qualify their own flash memory manufacturing processes, Defendants solicited Mr. Sugita to steal SanDisk's technical, operational and business trade secrets—including but not limited to SanDisk's flash memory research and development analyses, cell and circuit designs and layouts,

integrated circuit devices and features, and fabrication processes, including process flows, steps and recipes, and other operational and business trade secrets.

41. Defendants acquired and used, and continue to use, SanDisk trade secret information acquired by Mr. Sugita and belonging to SanDisk, knowing or having reason to know that the trade secrets were acquired by improper means, or were disclosed to Defendants by a person who owed a duty to SanDisk to maintain the secrecy of SanDisk's trade secrets.

42. Upon information and belief, SanDisk's trade secrets have been and are used throughout Defendants' operations, procedures, manufacturing processes and related business activities, and in Defendants' products. Defendants have directed these products towards, introduced them into, and offered to sell, have sold and continue to sell them to California customers, and to other North American customers through marketing and sales activities conducted in California, in order to obtain business and revenues from California and United States customers, and to compete directly and unfairly against SanDisk in and throughout California. Defendants' misuse of SanDisk's trade secrets is continuing, and poses the additional threat of unauthorized disclosure and use of SanDisk's trade secrets by others.

43. SanDisk's trade secrets derive independent economic value, actual or potential, from not being generally known to the public, or to other entities and persons such as the Hynix Defendants, who can obtain value from their disclosure or use. SanDisk's knowledge and use of these trade secrets provides SanDisk with competitive advantages over those who do not know them. SanDisk's trade secrets are not matters either of general knowledge in the field of semiconductor processing and manufacture.

44. SanDisk has made, and continues to make, efforts that are reasonable under the circumstances to protect the secrecy of their trade secrets by, among other things, requiring its employees to execute non-disclosure agreements, by designating certain documents containing trade secret information as "confidential" or "restricted," and by restricting access to trade secret information to employees on a need-to-know basis, and to customers or joint venture partners only upon their agreement to keep such information confidential.

45. Defendants' misuse of SanDisk's trade secrets, unless and until enjoined and restrained by this Court, will greatly and irreparably injure SanDisk.

46. SanDisk has no adequate remedy at law for the present and threatened future injuries being caused by Defendants. Defendants' misuse of SanDisk's trade secrets has allowed Defendants to build a reputation they do not deserve, to gain market share, and to steal business from SanDisk. SanDisk, therefore, is entitled to injunctive relief prohibiting Defendants from further misuse and/or disclosure of SanDisk's trade secrets, and information derived therefrom, in any services and products being sold or offered for sale to California customers, or to others through Defendants' activities in California, to compel Defendants to return all materials incorporating, disclosing, or derived from SanDisk's trade secrets, and to prevent Defendants from further capitalizing on their ill-gotten gains.

47. SanDisk is entitled to damages for the actual loss caused by Defendants' misappropriation of SanDisk's trade secrets, and/or for any unjust enrichment Defendants have enjoyed by such misappropriation.

48. Defendants' misappropriation of SanDisk's trade secrets was willful and malicious. California Civil Code Sections 3426.3(c) and 3426.4 thus entitle SanDisk to an award of exemplary damages equal to twice the actual damages caused by the misappropriation, as well as SanDisk's reasonable attorneys' fees.

## **PRAYER FOR RELIEF**

SanDisk respectfully requests the following relief:

1. A judgment that Defendants are liable on all causes of action alleged herein;

2. Damages for actual loss and unjust enrichment;

3. Pre- and post-judgment interest;

4. Exemplary and punitive damages;

5. Attorneys' fees and costs incurred by SanDisk in bringing and litigating this action;

6. Preliminary and permanent injunctive relief pursuant to which Defendants, and each of them, and their employees or representatives, and all persons acting in concert or

participating with them are ordered, enjoined, or restrained, directly or indirectly, by any means whatsoever, as follows:

i) From offering to sell or selling products that utilize, embody, or were developed using SanDisk's trade secrets and/or other valuable intellectual property and business information;

ii) From disclosing or using SanDisk's trade secrets and other valuable intellectual property and business information;

iii) From utilizing products or processes that were derived from or embody SanDisk's trade secrets;

iv) Immediately to preserve and return to SanDisk (i) all copies of all SanDisk documents and information, including without limitation any trade secret and other confidential or proprietary information acquired from SanDisk; and (ii) all copies of all materials (in paper, electronic, or any other form) containing any, or derived from any, SanDisk information, trade secrets, or other confidential or proprietary information; and

v) To turn over to the Court any proceeds they have received from the misappropriation of SanDisk's trade secrets and other valuable intellectual property and business information, which proceeds would be held in constructive trust until the conclusion of this litigation;

7. Reasonable royalties;

8. Costs of court; and

9. All such other relief that the Court deems just and proper.

**DEMAND FOR JURY TRIAL**

Plaintiff SanDisk hereby demands a trial by jury for all causes of action, claims or issues in this action which are triable as a matter of right to a jury.

Dated: May 5, 2014

KEKER & VAN NEST LLP

By: ______________________
JEFFREY R. CHANIN

Attorneys for Plaintiff SANDISK CORPORATION