1

2

3

4

5

6

7

8

UNITED STATES DISTRICT COURT

9

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

10

11

| | |
|---|---|
| SANDISK CORPORATION, | Case No.:14-CV-04940-LHK |
| Plaintiff, | **ORDER GRANTING MOTION TO REMAND, AND DENYING MOTION TO COMPEL ARBITRATION AND MOTION TO DISMISS** |
| v. | |
| SK HYNIX INC., et al., | Re: Dkt. Nos. 52, 53 & 75 |
| Defendants. | |

17        Before the Court are three motions. Plaintiff SanDisk Corporation ("SanDisk") has filed a

18  motion to remand the instant case to Santa Clara County Superior Court. ECF No. 75 ("Mot.

19  Remand"). Defendants SK Hynix, Inc., SK Hynix America, Inc., and SK Hynix Memory

20  Solutions (collectively, "Hynix") have filed a motion to compel arbitration, ECF No. 53 ("Mot.

21  Compel"), as well as a motion to dismiss for *forum non conveniens*, ECF No. 52 ("Mot.

22  Dismiss"). Having considered the parties' submissions, the record in this case, and the applicable

23  law, the Court GRANTS SanDisk's motion to remand, DENIES Hynix's motion to compel

24  arbitration without prejudice, and DENIES Hynix's motion to dismiss for *forum non conveniens*

25  without prejudice, for the reasons stated below.

26  **I.   BACKGROUND**

27

1

United States District Court
Northern District of California

## A. Factual Background

SanDisk is a Delaware corporation with its principal place of business in Milpitas, California. ECF No. 2-12 ("Compl.") ¶ 9. SanDisk designs, develops, and manufactures flash memory products, such as solid-state drives, flash memory cards, and USB flash drives. *Id.* ¶¶ 2, 9. Flash memory is an electronic, non-volatile computer storage medium. *Id.* ¶ 19. SanDisk's flash memory products are used in, among other things, computers, mobile phones, and gaming devices. *Id.* ¶ 9.

Defendant SK Hynix, Inc. ("SK Hynix") is a South Korean company with its principal place of business in Incheon, South Korea. *Id.* ¶ 10. SK Hynix manufactures various digital memory products, including flash memory, which are distributed throughout the world. *Id.* Defendants SK Hynix America, Inc. and SK Hynix Memory Solutions are California corporations with their principal places of business in San Jose, California. *Id.* ¶¶ 11-12. SK Hynix America, Inc. and SK Hynix Memory Solutions are wholly-owned North American subsidiaries of SK Hynix, and sell and distribute SK Hynix's flash memory products throughout the United States. *Id.*

### 1. The Patent Cross-License Agreement

On March 20, 2007, SanDisk and Hynix entered into a ██████ Patent Cross License Agreement. *See* ECF No. 50-2 ("PCLA"), § 6.14(dd). As part of the Patent Cross License Agreement, SanDisk granted to Hynix ███████████████████████████████████ ███████████████████████████████████████ *Id.* § 2.1. The Patent Cross License Agreement defines ██████████████████ as █████████████████████ ██████████████████████████████████████████████ ██████████████████████████████████████████████ ███████████████████████ ██████████████ ████████████████ *Id.* § 6.14(bb). In consideration for the Patent Cross License Agreement, Hynix paid SanDisk a license fee of ██████████. *Id.* § 4.2.

The Patent Cross License Agreement includes two clauses that are of particular relevance

2

United States District Court
Northern District of California

to the instant dispute. First, the Patent Cross License Agreement contains an arbitration clause.

That clause states: ███████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████ *Id*.

§ 6.10. The arbitration clause further provides that arbitration will take place in ██████████. *Id*.

Second, the ██████████████████ of the Patent Cross License Agreement provides

that ███████████████████████████████████████████████

███████████████████████████████████████████████████

██████████████████████████ *Id*. § 6.2(g).

### 2. Hynix's Alleged Misappropriation of SanDisk Trade Secrets

The instant litigation stems from SanDisk's claimed trade secrets involving SanDisk's

designs, devices, processes, and recipes related to its flash memory products, including a type of

flash memory known as NAND flash memory. *See* Compl. ¶¶ 20-21. SanDisk claims that its trade

secrets related to flash memory give SanDisk a competitive edge over other its competitors,

including Hynix. *Id*. ¶ 24.

Sometime in the 2000s, SanDisk formed a series of joint ventures with another company in

the industry, Toshiba Corporation ("Toshiba"). *Id*. ¶ 27. SanDisk and Toshiba both contributed

employees and confidential information to the joint ventures. *Id*. ¶ 28. SanDisk's and Toshiba's

contribution of confidential information was subject to confidentiality agreements, and both

SanDisk and Toshiba allegedly took reasonable measures to maintain the confidentiality of

information each company contributed to the joint venture. *Id*. One of the SanDisk-Toshiba joint

ventures projects was a consolidated semiconductor fabrication plant located in Yokkaichi, Japan,

which would develop advanced flash memory devices and processes related to NAND flash

memory. *Id*. ¶ 29.

One of the SanDisk employees hired to work at the Yokkaichi plant was Yoshitaka Sugita

("Mr. Sugita"). *Id*. ¶ 31. Mr. Sugita worked for SanDisk from approximately February 2003 until

Case No.: 14-CV-04940-LHK
ORDER GRANTING MOTION TO REMAND, AND DENYING MOTION TO COMPEL ARBITRATION AND
MOTION TO DISMISS

United States District Court
Northern District of California

United States District Court
Northern District of California

1    he resigned effective June 30, 2008. *Id.* Upon his resignation, Mr. Sugita went to work for Hynix.

2    *Id.* ¶ 34. In or around May 2008, while working at the Yokkaichi plant and before he left to work

3    at Hynix, Mr. Sugita allegedly accessed and misappropriated 10 gigabytes of information,

4    including SanDisk's most sensitive trade secrets related to NAND flash memory. *Id.* SanDisk

5    alleges that Hynix solicited Mr. Sugita to download these files and misappropriate SanDisk's trade

6    secret information. *Id.* Mr. Sugita worked at Hynix in South Korea from July 2008 to June 2011.

7    *Id.* ¶ 35.

8        SanDisk learned of the alleged misappropriation of its trade secrets in January 2014, from

9    an informant who had first worked at SanDisk and subsequently at Hynix. *Id.* ¶ 36. This informant

10   told SanDisk that documents containing the legend "SanDisk/Toshiba Confidential" were

11   distributed among Hynix employees and posted on Hynix's internal database. *Id.* In addition, the

12   informant reported that a document was printed on paper bearing a Hynix watermark, but it

13   "clearly" contained evaluations, test results, technical decisions and information co-developed by

14   SanDisk and Toshiba and bearing the legend "SanDisk/Toshiba Confidential." *Id.* SanDisk and

15   Toshiba provided the Tokyo Metropolitan Police Department with evidence supporting allegations

16   that Mr. Sugita and Hynix misappropriated SanDisk's trade secrets. *Id.* ¶ 38. Japanese law

17   enforcement detained Mr. Sugita on March 13, 2014. *Id.*

18       According to counsel for SanDisk who attended Mr. Sugita's criminal trial on January 20

19   and 21, 2015, Mr. Sugita testified that a Hynix director asked him to steal non-public

20   semiconductor design information for SanDisk-Toshiba flash memory products while Mr. Sugita

21   was employed at SanDisk. Declaration of Jeffrey Chanin in Support of SanDisk's Opposition to

22   Motion to Dismiss for *Forum non Conveniens*, ECF No. 113, ¶ 15. Mr. Sugita further testified that

23   while he was negotiating with Hynix for employment there, Mr. Sugita told Hynix that he could

24   provide Hynix stolen SanDisk-Toshiba NAND flash memory information in exchange for

25   director-level compensation and benefits. *Id.* Mr. Sugita further testified that when he was

26   employed at Hynix, Hynix pressured him heavily to disclose additional NAND flash

27                                                4

28   Case No.: 14-CV-04940-LHK
     ORDER GRANTING MOTION TO REMAND, AND DENYING MOTION TO COMPEL ARBITRATION AND
     MOTION TO DISMISS

1   semiconductor information that Mr. Sugita had stolen from SanDisk. *Id*. ¶ 16.

2          According to emails submitted as evidence during Mr. Sugita's criminal trial, Ko Ahn, a

3   Hynix director, emailed Mr. Sugita on March 18, 2008 (while Mr. Sugita was still employed at

4   SanDisk) to arrange for Mr. Sugita to meet with the person in charge of human resources at

5   Hynix.[1] Exhibit A to the Supplemental Declaration of Jeffrey R. Chain in Support of SanDisk's

6   Opposition to Motion to Dismiss for *Forum non Conveniens*, ECF No. 129-3, at 1-2. In that email,

7   which is written in English, Ko Ahn also states "I would like to know the information of nonon

8   structure." *Id*. at 1. According to counsel for Hynix, "nonon" refers to a "[n]itride-oxide nitride

9   oxide nitride dielectric which can be used in certain NAND flash devices." Supplemental

10  Declaration of Jeffrey R. Chain in Support of SanDisk's Opposition to Motion to Dismiss for

11  *Forum non Conveniens*, ECF No. 129-2, ¶ 3. In a subsequent email from April 24, 2008, Mr.

12  Sugita emailed Ko Ahn to say that he had "[m]any useful flash memory information [] saved as

13  power-point file," and asked if Hynix will purchase PowerPoint so that Mr. Sugita can access the

14  information on "[m]y home PC." *Id*. Ex. C, at 1. Ko Ahn subsequently emailed Mr. Sugita to tell

15  him, "We will pay for the expenses of Power[Point] software." *Id*.

16         Mr. Sugita ultimately pled guilty to stealing SanDisk and Toshiba trade secrets. *See*

17  Declaration of Ryoichi Mimura in Support of SanDisk's Opposition to Motion to Dismiss for

18  *Forum non Conveniens*, ECF No. 116 ("Mimura Decl."), ¶ 17. Mr. Sugita's sentencing was

19  scheduled for March 9, 2015. *Id*.

20  **B.  Procedural History**

21         On March 13, 2014, SanDisk filed a complaint in Santa Clara County Superior Court

22  alleging one cause of action against Hynix for misappropriation of trade secrets under California

23

---

24  [1] On March 20, 2015, SanDisk filed a request for leave to file supplemental declaration of Jeffrey Chanin and exhibits in support of SanDisk's opposition to Hynix's motion to dismiss for *forum non conveniens*, which attached the emails used in Mr. Sugita's criminal trial. ECF No. 129. SanDisk stated that the prosecutor in Mr. Sugita's criminal trial provided SanDisk with copies of the emails used as evidence on March 19, 2015. *Id*. at 1. SanDisk sought leave from the Court to supplement the record with these emails. *Id*. SanDisk's request is hereby GRANTED.

25

26

27                                                            5

United States District Court
Northern District of California

1  Civil Code §§ 3426 *et seq*., the California Uniform Trade Secrets Act ("CUTSA"). Compl. ¶¶ 39-

2  48. On May 20, 2014, Judge Kirwan of the Superior Court granted SanDisk's ex parte application

3  for a temporary restraining order. ECF No. 8-4. Judge Kirwan ordered Hynix, *inter alia*, not to

4  disclose any "confidential, proprietary and/or trade secret information that it currently knows or

5  has reason to know belongs to, originates from, or was developed by, SanDisk and/or SanDisk or

6  Toshiba in their NAND flash memory operations." *Id*. at 1. Judge Kirwan also ordered Hynix to

7  appear at a hearing on June 20, 2014 to show cause as to why a preliminary injunction should not

8  issue. *Id*. On July 1, 2014, Judge Kirwan issued an order granting in part SanDisk's motion for a

9  preliminary injunction. ECF No. 14-13.

10  During proceedings before Judge Kirwan, counsel for Hynix represented that the instant

11  case was not arbitrable. Specifically, in the parties' July 24, 2014 joint case management

12  statement, Hynix (as well as Sandisk) stated that Hynix was "not currently aware of any applicable

13  arbitration clause." ECF No. 16-9, at 2. Counsel for Hynix also emphasized that the instant

14  litigation was "strictly" about the misappropriation of trade secrets. *See* Exhibit B to the

15  Declaration of Jeffrey Chanin in Support of Motion to Remand, ECF No. 76-2 ("Chanin Decl."),

16  July 16, 2014 Hr'g Tr. at 21:21. For example, at a July 16, 2014 hearing before Judge Kirwan,

17  counsel for Hynix stated that this case "is strictly trade secrets. This is the trade secrets act. It is

18  strictly trade secrets. . . . This is misappropriation of trade secrets." *Id.* at 21:20-22. At that same

19  hearing, counsel for Hynix stated that there is "one cause of action in this case. It is under

20  CUTSA." *Id.* at 27:17-18. Similarly in a subsequent declaration, counsel for Hynix represented

21  that the SanDisk-Hynix lawsuit involved "no claims of patent infringement," and "involves

22  alleged trade secrets." Chanin Decl., Ex. C, ¶ 13.

23  Meanwhile, in a related case also before Judge Kirwan, Toshiba sought to have Hynix's

24  then-lead counsel disqualified from representing Hynix in the litigation with SanDisk. ECF No. 1,

25  at 5. On September 5, 2014, Judge Kirwan issued a preliminary injunction against Hynix's then-

26  lead counsel and ordered counsel to withdraw from the case. *Id*.; ECF No. 19-2, at 2. On

27  

28  

Case No.: 14-CV-04940-LHK
ORDER GRANTING MOTION TO REMAND, AND DENYING MOTION TO COMPEL ARBITRATION AND
MOTION TO DISMISS

United States District Court
Northern District of California

September 10, 2014, Hynix filed an ex parte application for a stay of proceedings to allow Hynix time to retain new lead counsel. ECF No. 19-2. Judge Kirwan subsequently granted the motion and stayed proceedings until November 10, 2014, at which time discovery would commence. ECF No. 19-7, at 2.

On November 6, 2014, four days before Judge Kirwan's stay ended, Hynix's new lead counsel filed a notice of removal to this Court. ECF No. 1. Hynix removed this case pursuant to Chapter 2 of the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 201-08. *Id*. at 1. The relevant provision of the FAA provides that a defendant may remove a state-filed lawsuit when the subject matter of the suit "relates to" an arbitration agreement that falls under the Convention on the Recognition and Enforcement of Foreign Arbitral Awards ("the Convention"). 9 U.S.C. § 205. In Hynix's notice of removal, Hynix stated that SanDisk and Hynix are parties to the Patent Cross License Agreement, which contains an arbitration clause that falls under the Convention. *Id*. That arbitration clause provides that SanDisk and Hynix agreed to arbitrate ███████████ ███████████████████████████████████████████████████████████████████████████ *Id*. Hynix argues that SanDisk's lawsuit for trade secret misappropriation relates to the Patent Cross License Agreement because SanDisk ██████████████████████████████ ███████████████████████ that SanDisk now alleges Hynix misappropriated. *Id.*, at 1.

On November 13, 2014, Hynix filed a motion to dismiss for *forum non conveniens*, ECF No. 52, as well as a motion to compel arbitration, ECF No. 53. On February 12, 2015, SanDisk filed an opposition to the motion to compel arbitration, ECF No. 110 ("Opp'n Mot. Compel"), as well as an opposition to the motion to dismiss, ECF No. 112. On March 2, 2015, Hynix filed a reply in support of its motion to compel arbitration. ECF No. 121 ("Reply Mot. Compel"). On March 12, 2015, Hynix filed a reply in support of its motion to dismiss. ECF No. 127.

On December 8, 2014, SanDisk filed a motion to remand. ECF No. 75. On January 7, 2015, Hynix filed an opposition to SanDisk's motion to remand. ECF No. 90 ("Opp'n Mot. Remand"). On January 22, 2015, SanDisk filed a reply in support of its motion to remand. ECF

7

No. 100 ("Reply Mot. Remand").

## II. LEGAL STANDARD

### A. Motion to Remand

After a case is removed to federal court, a plaintiff may bring a motion to remand to challenge removal of the action due to lack of subject matter jurisdiction or because of a defect in the removal procedure. *See* 28 U.S.C. § 1447(c). Upon a motion to remand to state court, the party asserting federal jurisdiction has the burden of proof. *Emrich v. Touche Ross & Co.*, 846 F.2d 1190, 1195 (9th Cir. 1988).

### B. Motion to Compel Arbitration

The Federal Arbitration Act applies to arbitration agreements in any contract affecting interstate commerce. *See Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 119 (2001); 9 U.S.C. § 2. The FAA mandates that written agreements to arbitrate disputes "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. Parties can agree to delegate arbitrability—or "gateway" issues concerning the scope and enforceability of the arbitration agreement, and whether the dispute should go to arbitration at all—to the arbitrator. The Supreme Court has held that the question of "who has the power to decide arbitrability," the court or the arbitrator, "turns upon what the parties agreed about *that* matter." *First Options of Chi. v. Kaplan,* 514 U.S. 938, 943 (1995) (emphasis in original). The Supreme Court also recognizes a heightened standard for an arbitrator to decide arbitrability issues. *See AT & T Techs. v. Commc'ns Workers,* 475 U.S. 643, 649 (1986) ("Unless the parties clearly and unmistakably provide otherwise, the question of whether the parties agreed to arbitrate is to be decided by the court, not the arbitrator."). However, in cases where the parties "clearly and unmistakably intend to delegate the power to decide arbitrability to an arbitrator," the court's inquiry is "limited . . . [to] whether the assertion of arbitrability is 'wholly groundless.'" *Qualcomm Inc. v. Nokia Corp.*, 466 F.3d 1366, 1371 (Fed. Cir. 2006) (applying Ninth Circuit law). The scope of an arbitration clause in a contract under the FAA is governed by federal law.

8

United States District Court
Northern District of California

1   *Tracer Research Corp. v. Nat'l Env't Serv. Corp.*, 42 F.3d 1292, 1294 (9th Cir. 1994); *see also*

2   *Mediterranean Enter., Inc. v. Ssangyong Corp.*, 708 F.2d 1458, 1463 (9th Cir. 1983) ("An action

3   brought under the [FAA] is properly characterized as arising under the body of federal law

4   regulating interstate commerce. . . . Federal law therefore applies to our determination of the scope

5   of this arbitration agreement.") (internal citations omitted).

### C.  Motion to Dismiss for Forum Non Conveniens

7          Whether to dismiss an action for *forum non conveniens* is a decision "committed to the

8   sound discretion of the trial court." *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 257 (1981). "A

9   party moving to dismiss based on *forum non conveniens* bears the burden of showing (1) that there

10  is an adequate alternative forum, and (2) that the balance of private and public interest factors

11  favors dismissal." *Dole Food Co., Inc. v. Watts*, 303 F.3d 1104, 1118 (9th Cir. 2002) (citing *Lueck

12  v. Sundstrand Corp.*, 236 F.3d 1137, 1142-43 (9th Cir. 2001)). The Ninth Circuit has recognized

13  that "the standard to be applied to a motion for dismissal on the ground of *forum non conveniens* is

14  whether . . . defendants have made a clear showing of facts which . . . establish such oppression

15  and vexation of a defendant as to be out of proportion to plaintiff's convenience, which may be

16  shown to be slight or nonexistent." *Id.* (quoting *Cheng v. Boeing Co.,* 708 F.2d 1406, 1410 (9th

17  Cir. 1983)) (internal brackets omitted). "*Forum non conveniens* is 'an exceptional tool to be

18  employed sparingly, not a . . . doctrine that compels plaintiffs to choose the optimal forum for

19  their claim.'" *Id.* (internal brackets omitted) (quoting *Ravelo Monegro v. Rosa*, 211 F.3d 509, 514

20  (9th Cir. 2000)).

### III. DISCUSSION

22         As a preliminary matter, the Court addresses the sequence of how it will decide the three

23  pending motions. SanDisk argues that the Court should first determine its motion to remand

24  because the "*only basis* for invoking federal subject matter jurisdiction is 9 U.S.C. § 205, which

25  itself requires that the Court find the parties entered into an arbitration agreement that relates to the

26  removed action." Opp'n Mot. Compel at 20 (emphasis in original). Thus, according to SanDisk, if

27                                                                  9

28  Case No.: 14-CV-04940-LHK
    ORDER GRANTING MOTION TO REMAND, AND DENYING MOTION TO COMPEL ARBITRATION AND
    MOTION TO DISMISS

United States District Court
Northern District of California

United States District Court
Northern District of California

the Court determines that Hynix's removal under § 205 was improper, the Court may remand the action for lack of jurisdiction without reaching Hynix's motion to compel arbitration or motion to dismiss for *forum non conveniens*. *Id*. at 20-21. Hynix argues that the Court should first decide Hynix's motion to dismiss for *forum non conveniens* before addressing SanDisk's motion to remand. Mot. Compel at 6-7. The Court notes that Hynix does not argue that the Court should first decide Hynix's motion to compel arbitration, and in any event the Court finds that to reach Hynix's motion to compel arbitration the Court would first have to decide whether Hynix properly removed this case pursuant to 9 U.S.C. § 205. *See, e.g.*, *Hawkins v. KPMG LLP*, 423 F. Supp. 2d 1038, 1042 (N.D. Cal. 2006) ("Before considering defendants' motion to compel arbitration, the court must consider whether removal under section 205 was proper. If removal was improper, this court lacks subject matter jurisdiction to adjudicate defendants' motion."). Therefore, the only issue is whether the Court should first decide SanDisk's motion to compel arbitration or Hynix's motion to dismiss for *forum non conveniens*.

"[A] federal court generally may not rule on the merits of a case without first determining that it has jurisdiction over the category of claim in suit (subject-matter jurisdiction) and the parties (personal jurisdiction)." *Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 430-31 (2007) (citing *Steel Co. v. Citizens for Better Environment*, 523 U.S. 83, 93-102 (1998)). However, "there is no mandatory 'sequencing of jurisdictional issues,'" and a district court "has leeway 'to choose among threshold grounds for denying audience to a case on the merits.'" *Id.* at 431 (quoting *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 584-85 (1999)). Therefore, a district court may address a motion to dismiss for *forum non conveniens* before reaching the question of subject matter jurisdiction when considerations of "convenience, fairness, and judicial economy so warrant." *Id.* at 432.

However, the Supreme Court has also made clear that "[i]n the mine run of cases," a district court "can readily determine that it lacks jurisdiction over the cause or the defendant," in which the case "the proper course would be to dismiss on that ground." *Id.* at 436. Accordingly,

Case No.: 14-CV-04940-LHK
ORDER GRANTING MOTION TO REMAND, AND DENYING MOTION TO COMPEL ARBITRATION AND MOTION TO DISMISS

when jurisdiction "'will involve no arduous inquiry,'" the court should address jurisdiction first. *Id.* (quoting *Ruhrgas*, 526 U.S. at 587-88). It is only "where subject-matter or personal jurisdiction is difficult to determine, and *forum non conveniens* considerations weigh heavily in favor of dismissal," that "the court properly takes the less burdensome course" by dismissing on *forum non conveniens* grounds without reaching the threshold question of jurisdiction. *Id.*

Here, the Court believes the instant litigation falls into the "mine run of cases" where the question of jurisdiction will involve "no arduous inquiry." *Id.* Hynix has removed the instant case pursuant to 9 U.S.C. § 205, and claims that statute as the only basis of federal jurisdiction. ECF No. 1, at 1. Numerous other courts, including the Ninth Circuit, have addressed when removal under § 205 is proper. *See, e.g.*, *Infuturia Global Ltd. v. Sequus Pharm., Inc.*, 631 F.3d 1133, 1137-38 (9th Cir. 2011) (addressing scope of removal jurisdiction under § 205). Accordingly, the question of proper removal under § 205 is not an issue of first impression, a factor that might otherwise weigh in favor of addressing the issue of *forum non conveniens* first. *See Sinochem*, 549 U.S. at 435 (where question of subject matter jurisdiction "presented an issue of first impression in the Third Circuit," the matter was "a textbook case for immediate *forum non conveniens* dismissal"). Moreover, SanDisk originally filed this proceeding in Santa Clara County Superior Court, *see* Compl., which weighs in favor of addressing jurisdiction first, *see Sinochem*, 549 U.S. at 436 (where determining jurisdiction "will involve no arduous inquiry," the "consideration ordinarily accorded the plaintiff's choice of forum should impel the federal court to dispose" of jurisdiction first) (internal quotation marks omitted). Accordingly, the Court will first decide the threshold question of jurisdiction by addressing SanDisk's motion to remand.

### A. SanDisk's Motion to Remand

As previously discussed, Hynix has removed the instant litigation pursuant to the FAA, 9 U.S.C. § 205. ECF No. 1, at 2-3. The Court first addresses the scope of removal under § 205, and then discusses the merits of SanDisk's motion to remand.

### 1. Scope of Removal Under § 205

11

Case No.: 14-CV-04940-LHK
ORDER GRANTING MOTION TO REMAND, AND DENYING MOTION TO COMPEL ARBITRATION AND
MOTION TO DISMISS

United States District Court
Northern District of California

Section 205 of the FAA relates to arbitration agreements that "fall[] under the Convention [on the Recognition and Enforcement of Foreign Arbitral Awards]." 9 U.S.C. § 205; *see also id.* § 201. The Convention was adopted on June 10, 1958, by a special conference of the United Nations Economic and Social Council, and Congress implemented the Convention by passing Chapter 2 of the FAA, 9 U.S.C. § 201 *et seq. Infuturia*, 631 F.3d at 1135 n.2. "The goal of the Convention, and the principal purpose underlying American adoption and implementation of it, was to encourage the recognition and enforcement of commercial arbitration agreements in international contracts and to unify the standards by which agreements to arbitrate are observed and arbitral awards are enforced in the signatory countries." *Scherk v. Alberto-Culver Co.*, 417 U.S. 506, 520 n.15 (1974). Section 205 provides in relevant part:

> Where the subject matter of an action or proceeding pending in a State court relates to an arbitration agreement or award falling under the Convention, the defendant or the defendants may, at any time before the trial thereof, remove such action or proceeding to the district court of the United States for the district and division embracing the place where the action or proceeding is pending.

9 U.S.C. § 205.

The Ninth Circuit has held that a federal court "'will have jurisdiction under § 205 over just about any suit in which a defendant contends that an arbitration clause falling under the Convention provides a defense.'" *Infuturia*, 631 F.3d at 1138 (quoting *Beiser v. Weyler*, 284 F.3d 665, 669 (5th Cir. 2002)). Accordingly, if it is "'conceivable that the arbitration clause will impact the disposition of the case,'" a federal court has jurisdiction to decide the dispute. *Id.* (quoting *Beiser*, 284 F.3d at 669).

However, the scope of removal under § 205 is not limitless. This is because "[a]rbitration under the [FAA] is a matter of consent, not coercion." *Volt Info. Sciences, Inc. v. Bd. of Trustees of Leland Stanford Junior Univ.*, 489 U.S. 468, 479 (1989). Accordingly, even for contracts that fall under the FAA, "'a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit.'" *Cartmell v. Verisign, Inc.*, 107 F. App'x 162, 163 (9th Cir. 2004)

12

(quoting *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83 (2002). Moreover, when considering questions of arbitration, a court should "not override the clear intent of the parties, or reach a result inconsistent with the plain text of the contract, simply because the policy favoring arbitration is implicated." *E.E.O.C. v. Waffle House, Inc.*, 534 U.S. 279, 294 (2002); *see also Volt*, 489 U.S. at 478 (the FAA "does not require parties to arbitrate when they have not agreed to do so"). Indeed, "[w]ithout meaningful limit" on the scope of § 205, "a defendant could obtain federal jurisdiction anytime it is party to an arbitration agreement falling under the Convention, regardless of whether the arbitration provision has anything to do with the issues raised in the state court lawsuit." *HSC Holdings v. Hughes*, No. CIV.A. 6-12-18, 2012 WL 4127960, at *3 (S.D. Tex. Sept. 18, 2012). Thus, while jurisdiction under § 205 is broad, it does not encompass "frivolous petition[s] for removal." *Beiser*, 284 F.3d at 671; *see also Infuturia*, 631 F.3d at 1138 (section 205 does not apply to situation in which a defendant's assertion of jurisdiction is "absurd or impossible") (internal quotation marks omitted).

### 2. Hynix's Removal in the Instant Case

The Court now turns to SanDisk's motion to remand. As a preliminary matter, the Court notes that the parties do not dispute that the arbitration agreement in the Patent Cross License Agreement "fall[s] under the Convention" as required by § 205. *See* 9 U.S.C. § 205. Nor do the parties dispute that Hynix's notice of removal was timely. *See id.* The only dispute is whether the instant litigation "relates to" the Patent Cross License Agreement.

The "first task" of a court assessing the scope of an arbitration clause is "to determine whether the parties agreed to arbitrate *that* dispute." *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 626 (1985) (emphasis added). The arbitration clause in the Patent Cross License Agreement provides that ███████████████████████████

████████████████████████████████████████████████████████

████████████  PCLA § 6.10. Accordingly, to determine whether it is "conceivable" that the arbitration clause in the Patent Cross License Agreement "will impact the disposition of [this]

13

United States District Court
Northern District of California

case," *Infuturia*, 631 F.3d at 1138 (internal quotation marks omitted), the Court must determine whether it is conceivable that the instant dispute ███████████ the Patent Cross License Agreement ██████████████████████████ PCLA § 6.10.

The Court first considers whether it is conceivable that the instant dispute is ███████ the Patent Cross License Agreement. In its Complaint, SanDisk brings a single cause of action under CUTSA alleging that Hynix misappropriated SanDisk trade secrets. Compl. ¶¶ 39-48. Meanwhile, as part of the Patent Cross License Agreement, SanDisk granted to Hynix ██████ ███████████████████████████████████████ defined as ███████████████████████████ ███████████████████████ *Id*. §§ 2.1, 6.14(bb). A separate provision of the Patent Cross License Agreement provides that ████████████████████ ████████████████████████████████████ *Id*. § 6.2(g) (emphasis added). In short, the Patent Cross License Agreement granted rights to ████████████████ but expressly excluded any right to, *inter alia*, ████████████████ PCLA § 2.1, 6.2(g). Where, as here, an arbitration clause in a license agreement limits its scope to disputes ████████ the license, the arbitration clause does not implicate disputes over matters that are expressly *excluded* from the license. *See Radware, Ltd. v. F5 Networks, Inc.*, No. C-13-02024-RMW, 2013 WL 6773799, at *2 (N.D. Cal. Dec. 23, 2013) (finding parties did not agree to arbitrate dispute over matter excluded from the terms of a patent license agreement containing the arbitration clause); *see also Volt*, 489 U.S. at 478 (the FAA "does not require parties to arbitrate when they have not agreed to do so");

The Court finds *Radware Ltd. v. F5 Networks, Inc.* to be instructive here. 2013 WL 6773799. At issue in *Radware* was a patent license agreement between the plaintiff and defendant that granted plaintiff the right to practice the claims of certain patents, "but only to the extent such Licensed Patent Rights cover the 'associative' or 'passive' modes of cookie persistence disclosed

14

and claimed in the '802 patent." *Id*. at *1. The patent license separately provided that "[t]he Licensed Patent Rights shall not include the use of the 'insert' or 'rewrite' modes of cookie persistence claimed in the '802 patent." *Id*. The patent license also included an arbitration clause that provided "all disputes between the parties arising out of or related to this Agreement" shall be submitted to arbitration. *Id*. In subsequent litigation, the defendant brought a counterclaim alleging that the plaintiff infringed the "insert mode" and "rewrite mode" of the '802 patent. *Id*. The plaintiff moved to compel arbitration on the grounds that the defendant's counterclaim fell within the scope of the patent license's arbitration clause. *Id*. The *Radware* court rejected that argument because the "License Agreement plainly excludes patent infringement claims concerning the insert and rewrite modes of cookie persistence, and F5's counterclaim is unambiguously confined to the insert and rewrite modes of cookie persistence." *Id*. at *2.

Similarly, here the Patent Cross License Agreement plainly excludes any rights to, *inter alia*, SanDisk's ███████████ PCLA § 6.2(g). SanDisk's lawsuit, meanwhile, is confined to a single state law claim for the misappropriation of trade secrets. Compl. ¶¶ 39-48. Accordingly, because the Patent Cross License Agreement expressly excludes the subject matter of this litigation, it is not conceivable that the instant dispute is ██████ the Patent Cross License Agreement such that the agreement could impact the disposition of this case. *See Infuturia*, 631 F.3d at 1138 (holding § 205 only provides basis for removal if it is "conceivable" that an "arbitration clause will impact the disposition of the case"). This is reinforced by the principle that where, as here, there is "no ambiguity" that the parties intended to exclude a matter from arbitration, a court should "not override the clear intent of the parties, or reach a result inconsistent with the plain text of the contract." *E.E.O.C.*, 534 U.S. at 294; *see also Samson v. NAMA Holdings, LLC*, 637 F.3d 915, 923 (9th Cir. 2011) (same). To find that the instant dispute could conceivably ███████ the Patent Cross License Agreement, when that agreement unambiguously excludes from its scope ██████████ PCLA § 6.2(g), would be to reach a result inconsistent with the plain text of the Patent Cross License Agreement and the clear intent

15

United States District Court
Northern District of California

1    of the parties.

2         The Court next turns to whether it is conceivable that the instant dispute involves

3    ███████████████ by the Patent Cross License Agreement. *See* PCLA § 6.10 (arbitration

4    clause providing that █████████████████████ related to the agreement

5    █████████████████████ will be resolved by binding arbitration). The Patent

6    Cross License Agreement does not separately define the term ██████████ *See id.* § 6.14

7    (definition of terms in the Patent Cross License Agreement). However, by its plain language the

8    only transactions contemplated by the Patent Cross License Agreement are SanDisk's grant to

9    Hynix of a ██████████████████████████████████

10   █████████████████████ as well as Hynix's grant to SanDisk of a ████

11   █████████████████████████████████████████

12   ████ *Id.* § 2.1, 3.1. Moreover, the Patent Cross License Agreement expressly excludes from

13   these transactions ███████████ to the parties' █████████ *Id.* § 6.2(g).

14   Accordingly, it is not conceivable that the alleged theft of trade secrets, which is the claim

15   SanDisk brings here, *see* Compl. ¶¶ 39-48, could relate to the █████████████ by the

16   Patent Cross License Agreement.

17        Furthermore, neither party claims that Hynix obtained SanDisk trade secrets via the

18   ███████████ by the Patent Cross License Agreement. Indeed, SanDisk alleges

19   Hynix obtained SanDisk trade secrets due to the *criminal* act of Mr. Sugita, a former Hynix

20   employee. *See, e.g.*, Compl. ¶ 41 (alleging that "Defendants solicited Mr. Sugita to steal SanDisk's

21   technical, operational and business trade secrets—including but not limited to SanDisk's flash

22   memory research and development analyses, cell and circuit designs and layouts, integrated circuit

23   devices and features, and fabrication processes"). Mr. Sugita has already pled guilty in Japan to

24   stealing SanDisk and Toshiba trade secrets. Mimura Decl. ¶ 17. Moreover, during his trial Mr.

25   Sugita testified that a Hynix director asked Mr. Sugita to steal non-public information related to

26   SanDisk-Toshiba flash memory products, and that after Mr. Sugita switched employment to

27                                              16

28   Case No.: 14-CV-04940-LHK
     ORDER GRANTING MOTION TO REMAND, AND DENYING MOTION TO COMPEL ARBITRATION AND
     MOTION TO DISMISS

United States District Court
Northern District of California

Hynix, Hynix pressured him to disclose additional stolen NAND flash semiconductor information. Chanin Reply Decl.¶ 16. Mr. Sugita's testimony is supported by emails between Mr. Sugita and a Hynix director that were used as evidence during Mr. Sugita's criminal trial, including an email in which the Hynix director asked Mr. Sugita for "information" related to the structure of NAND flash devices, and another email where the same Hynix director offered to buy Mr. Sugita PowerPoint so Mr. Sugita could access "useful flash memory information" taken from SanDisk. Exhibit A & Exhibit C to the Supplemental Declaration of Jeffrey R. Chanin in Support of SanDisk's Opposition to Motion to Dismiss for *Forum non Conveniens*, ECF No. 129-2. Mr. Sugita's criminal conduct and Hynix's alleged role in facilitating it are subjects which have no relation to the terms of the Patent Cross License Agreement. This provides an additional reason why the Patent Cross License Agreement could not conceivably affect the outcome of the instant litigation. *See Infuturia*, 631 F.3d at 1138 (holding § 205 only provides basis for removal if it is "conceivable" that an "arbitration clause will impact the disposition of the case")

The Court also takes notice of the fact that Hynix on several occasions represented to Judge Kirwan of the Santa Clara County Superior Court that the instant case was either not arbitrable or did not involve a dispute over patents. For instance, in the parties' July 24, 2014 joint case management statement, Hynix (along with SanDisk) stated that it was "not currently aware of any applicable arbitration clause." ECF No. 16-9, at 2. As another example, in a July 16, 2014 hearing before Judge Kirwan, counsel for Hynix stated that this case "is strictly trade secrets. This is the trade secrets act. It is strictly trade secrets. . . . This is misappropriation of trade secrets." Chanin Decl., Ex. B, July 16, 2014 Hr'g Tr. at 21:20-22. In addition, in a declaration submitted in response to Toshiba's attempt to disqualify Hynix's former lead counsel, counsel for Hynix stated that the instant case involves "no claims of patent infringement," and "involves alleged trade secrets." Chanin Decl., Ex. C, ¶ 13. Hynix's representations to Judge Kirwan undermine Hynix's claim to this Court that the instant lawsuit relates to an arbitration clause in a patent license. *See Helfand v. Gerson*, 105 F.3d 530, 534-36 (9th Cir. 1997) (disapproving of litigant that took

Case No.: 14-CV-04940-LHK
ORDER GRANTING MOTION TO REMAND, AND DENYING MOTION TO COMPEL ARBITRATION AND MOTION TO DISMISS

United States District Court
Northern District of California

inconsistent positions in a state court proceeding and subsequent federal court proceeding).

The Court also takes notice of the fact that Hynix only removed the instant case pursuant to the Federal Arbitration Act after Hynix had litigated the matter for 10 months in Santa Clara County Superior Court. *See* ECF No. 2-1 (SanDisk's original Complaint in Santa Clara County Superior Court, filed on March 13, 2014); ECF No. 1 (Hynix's notice of removal, filed on November 6, 2014). Moreover, Hynix only invoked the Patent Cross License Agreement's arbitration clause as a potential defense after Judge Kirwan granted SanDisk's motion for a temporary restraining order, and granted in part SanDisk's motion for a preliminary injunction. *See* ECF No. 8-4, at 1 (temporary restraining order); ECF No. 14-13 (preliminary injunction order). Hynix also removed the instant case on November 6, 2014, four days before Judge Kirwan's stay of the case ended and discovery was set to commence. *See* ECF No. 19-7, at 2 (order staying the case until November 10, 2014, "at which time . . . discovery shall commence").

The Court finds these facts to be relevant because in general courts take "a dim view of litigants who seek arbitration after an unfavorable result in litigation." *Riverside Publ'g Co. v. Mercer Publ'g LLC*, 829 F. Supp. 2d 1017, 1022 (W.D. Wash. 2011); *see also ConWest Res., Inc. v. Playtime Novelties, Inc.*, No. C 06-5304SBA, 2007 WL 1288349, at *5 (N.D. Cal. May 1, 2007) ("What may be fairly inferred from the context of ConWest's repeated refusals to arbitrate, and then seeking arbitration after an unfavorable ruling on its preliminary injunction motion, is that ConWest is seeking an alternative forum sensing an adverse ruling in this one. Such use of arbitration as a method of forum shopping would be prejudicial to Playtime."); *St. Mary's Med. Ctr. of Evansville, Inc. v. Disco Aluminum Prods. Co.*, 969 F.2d 585, 589 (7th Cir. 1992) ("A party may not normally submit a claim for resolution in one forum and then, when it is disappointed with the result in that forum, seek another forum."); *Gonsalves v. Infosys Techs., Ltd.*, No. C 3:09-04112, 2010 WL 3118861, at *4 n.3 (N.D. Cal. Aug. 5, 2010) (noting that "defendant filed its motion to compel arbitration the day after the court issued an order denying its motion to dismiss plaintiffs['] claim for breach of contract and its motion to transfer venue. The court will not permit

18

United States District Court
Northern District of California

defendant to use a motion to compel arbitration as a means of 'forum shopping.'"). Courts also generally look unfavorably upon a party who litigates an issue in another forum to "see how the case was going . . . before deciding whether it would be better off there or in arbitration." *Cabinetree of Wisconsin, Inc. v. Kraftmaid Cabinetry, Inc.*, 50 F.3d 388, 391 (7th Cir. 1995) ("Selection of a forum in which to resolve a legal dispute should be made at the earliest possible opportunity in order to economize on the resources, both public and private, consumed in dispute resolution."); *see also Jones Motor Co. v. Chauffeurs, Teamsters & Helpers Local Union No. 633 of New Hampshire*, 671 F.2d 38, 43 (1st Cir. 1982) ("[T]o require that parties go to arbitration despite their having advanced so far in court proceedings before seeking arbitration would often be unfair, for it would effectively allow a party sensing an adverse court decision a second chance in another forum.").

In its notice of removal and its opposition to SanDisk's motion to remand, Hynix argues that SanDisk's trade secrets are only "*alleged* trade secrets" at this stage of the litigation. *See, e.g.*, Opp'n at 16 (emphasis in original). Hynix further argues that "alleged NAND trade secrets that SanDisk claims were misappropriated are actually covered by the patents it licensed under the PCLA." *Id.* Therefore, according to Hynix, "the PCLA [is] related to SanDisk's claims." *Id.*; *see also id.* at 9 (asserting that there is a "close relationship between SanDisk's suit and the PCLA").

There are two deficiencies with this argument. First, Hynix's argument that this case involves only "alleged" trade secrets understates the record before the Court. On May 20, 2014, Judge Kirwan granted SanDisk's motion for a temporary restraining order, ordering Hynix, *inter alia*, not to disclose any "confidential, proprietary and/or trade secret information that it currently knows or has reason to know belongs to, originates from, or was developed by, SanDisk and/or SanDisk or Toshiba in their NAND flash memory operations." ECF No. 8-4, at 1. Subsequently on July 1, 2014, Judge Kirwan granted in part SanDisk's motion for a preliminary injunction, ordering Hynix not to, *inter alia*, "use or disclose to any person, entity, or corporation . . . any confidential, proprietary and/or trade secret information that it currently knows or has reason to

United States District Court
Northern District of California

know originates from materials taken by former SanDisk employee Yoshitaka Sugita and provided to Hynix." ECF No. 14-13. Moreover, Mr. Sugita, the former Hynix employee who allegedly misappropriated SanDisk and Toshiba trade secrets at the behest of Hynix, has pled guilty to stealing SanDisk and Toshiba trade secrets, and was set to be sentenced on March 9, 2015. Mimura Decl. ¶ 17. In short, even if Hynix disputes whether SanDisk's information constitutes trade secrets, a Superior Court judge found SanDisk made a sufficient showing to warrant a temporary restraining order and a preliminary injunction to protect SanDisk's alleged trade secrets. Furthermore, a criminal court in Japan accepted the guilty plea of a former Hynix employee for the misappropriation of SanDisk's alleged trade secrets at issue here.

Second, Hynix's argument is deficient because it ignores the terms of the Patent Cross License Agreement. As previously discussed, the Patent Cross License Agreement expressly excludes from its scope any rights to, *inter alia*, ███████████ PCLA § 6.2(g). Where, as here, an arbitration clause in a license agreement is at issue, the arbitration clause does not implicate disputes over matters that are expressly excluded from the license. *Radware*, 2013 WL 6773799, at *2 (finding parties did not agree to arbitrate dispute over matter excluded from the terms of a patent license agreement containing the arbitration clause); *see also Volt*, 489 U.S. at 478 (the FAA "does not require parties to arbitrate when they have not agreed to do so"). Moreover, if the Court were to accept Hynix's argument as true, it would mean that SanDisk and Hynix agreed to arbitrate a dispute that was expressly excluded from the scope of the PCLA. Such a result would be "inconsistent with the plain text of the contract" and would result in the Court "overrid[ing] the clear intent of the parties," a course against which both the U.S. Supreme Court and the Ninth Circuit have cautioned. *Samson*, 637 F.3d at 923 (internal quotation marks omitted); *see also E.E.O.C.*, 534 U.S. at 294 (when considering questions of arbitration, a court should "not override the clear intent of the parties, or reach a result inconsistent with the plain text of the contract, simply because the policy favoring arbitration is implicated.").

Hynix also contends that the Patent Cross License Agreement permits Hynix to use

20

United States District Court
Northern District of California

██████████████████████ to manufacture ████████████████ and that ██████████

████████ include ████████████████████ Opp'n Mot. Remand at 5. Accordingly, Hynix

argues that because SanDisk alleges that Mr. Sugita stole trade secrets related to "NAND flash

memory technology," Compl. ¶¶ 4-5, the instant litigation relates to the Patent Cross License

Agreement. ECF No. 1, at 1. However, the terms of the Patent Cross License Agreement do not

support Hynix's argument. The agreement provides Hynix a license to ████████████ to

█████████████████████████████████ PCLA § 2.1. The agreement defines ████████████ to

██████████████ *inter alia*, ████████████████ and ██████████

██ *Id*. § 6.14(k) (emphasis added). Both ██████████████████ and ████

████████████████ are defined as products that operate or comprise, *inter alia*,

██████████████ *Id*. § 6.14(t). In short, the Patent Cross License Agreement defines ████

█████████ as products ████████ those which operate or comprise █████████████

████████ Therefore, Hynix's argument that the ████████████████ contemplated by the

PCLA specifically include ████████████████ appears to be incorrect. *See* Opp'n at 5.

Hynix, in its opposition to the motion to remand, also argues that it properly removed this

case to federal court because § 205 provides a "'low bar'" to removal. Opp'n Mot. Remand at 9

(quoting *Beiser*, 284 F.3d at 669). It is true that, in the Ninth Circuit, a district court will have

jurisdiction under § 205 over a suit where it is "conceivable that the arbitration clause will impact

the disposition of the case." *Infuturia*, 631 F.3d at 1138 (internal quotation marks omitted).

However, § 205 does not provide for removal where "the claimed connection between the

arbitration agreement and the lawsuit filed in state court is too remote." *HSC Holdings*, 2012 WL

4127960, at *4; *see also Infuturia*, 631 F.3d at 1138 (section 205 does not apply to situation in

which a defendant's assertion or jurisdiction is "absurd or impossible") (internal quotation marks

omitted); *Beiser*, 284 F.3d at 671 (§ 205 does not encompass "frivolous petition[s] for removal").

This is consistent with the principle that "a party cannot be required to submit to arbitration any

21

dispute which he has not agreed so to submit." *Cartmell*, 107 F. App'x at 163.

Here, the instant litigation involves a single claim of trade secret misappropriation stemming from the criminal conduct of a former Hynix employee. Moreover, the arbitration agreement invoked by Hynix is for a patent cross license, and excludes from its terms any right to ▮▮▮▮▮▮▮▮▮▮ PCLA § 6.2(g). Given these circumstances, the Court concludes that Hynix fails to raise a "conceivable" argument that the arbitration clause in the Patent Cross License Agreement would impact the disposition of this case. *See Infuturia*, 631 F.3d at 1138 (§ 205 only provides for removal if it is "conceivable" that an "arbitration clause will impact the disposition of the case"). Accordingly, the Court GRANTS SanDisk's motion to remand.

## IV. CONCLUSION

For the reasons stated above, SanDisk's motion to remand the case to Santa Clara County Superior Court is GRANTED. Hynix's motion to compel arbitration and motion to dismiss for *forum non conveniens* are DENIED without prejudice so that Hynix, if appropriate, may re-raise them in the Santa Clara County Superior Court.

**IT IS SO ORDERED.**

Dated: March 26, 2015

_____

*Lucy H. Koh*

LUCY H. KOH
United States District Judge

Case No.: 14-CV-04940-LHK
ORDER GRANTING MOTION TO REMAND, AND DENYING MOTION TO COMPEL ARBITRATION AND
MOTION TO DISMISS

United States District Court
Northern District of California